William GRIMM and Merrill
McGahan, Appellants,

v.

Thomas H. WAGONER, State of Alaska,
Division of Elections, and Loren Leman,
in his official capacity as Lieutenant
Governor, Appellees.

No. S–10953.

Supreme Court of Alaska.

Sept. 19, 2003.

Arthur S. Robinson, Robinson & Associates, Soldotna, and John M. Rice, Law Office of John M. Rice, P.C., Juneau, for Appellants.

Jeffrey D. Jefferson, The Jefferson Law Office, Kenai, for Appellee Thomas H. Wagoner.

Jan Hart DeYoung and Sarah Felix, Assistant Attorneys General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellees State of Alaska, Division of Elections, and Loren Leman.

James E. Fosler, Keesal, Young & Logan, Anchorage, for Amicus Curiae Alaska State Legislature.

Before: FABE, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Alaska Statute 39.50.030(a) requires candidates for elected office to file disclosure statements containing an "accurate representation" of their financial affairs. State senate candidate Thomas Wagoner filed a disclosure statement that failed to disclose several actual or potential financial interests. Two voters filed a private post-election enforcement action under AS 39.50.100, claiming that AS 39.50.060(b) required Wagoner to forfeit the election. The superior court conducted a trial and held for Wagoner. We conclude that the superior court did not err in applying a "substantial compliance" standard in deciding whether Wagoner satisfied the disclosure law. We also conclude that it did not err in alternatively ruling that if the lawsuit was a Title 15 election contest, plaintiffs had to prove that the omissions had an effect on the outcome of the election. We therefore affirm.

## II. FACTS AND PROCEEDINGS

Thomas H. Wagoner, a candidate for state Senate District Q, filed his Public Official Financial Disclosure Statement May 17, 2002. Wagoner was elected in the November 5, 2002 general election. He defeated the incumbent by 123 votes, and also defeated two other candidates.

On November 18 William Grimm and Merrill McGahan, two qualified voters, filed a civil action under AS 39.50.100 to enforce AS 39.50, Alaska's Public Official Financial Disclosure Law.[1] Their complaint alleged that Wagoner materially and substantially failed to disclose some of his business interests, and sought an order preventing him from taking office. They also moved for a temporary restraining order to enjoin the Division of Elections from certifying the Senate District Q election results. Their supporting memorandum explained that their civil action sought to implement AS 39.50.060(b), which prevents the lieutenant governor from certifying the election of "elected officials" who fail to comply with AS 39.50.

The complaint did not name the Division of Elections as a defendant. On November 25 the superior court ruled that the Division of Elections was an essential party and denied Grimm and McGahan's injunction motion as premature. Their amended complaint included the Division of Elections and the lieutenant governor as defendants, but on November 27 the superior court again denied their injunction motion, finding irreparable harm unlikely and the probability of success on the merits "extraordinarily low." On the same day, the Director of the Division of Elections certified Wagoner's election.

Alaska Public Offices Commission (APOC) staff reviewed Wagoner's disclosures after Grimm and McGahan filed suit. Informed by APOC that a fine would accrue for failure to file properly, Wagoner amended his disclosure statement November 21 to acknowledge additional business interests and associations. Wagoner explained to APOC that he had believed certain matters, including his position as officer of a homeowners' association in California, did not have to be disclosed under the disclosure law.

Following its audit, APOC staff issued a "Recommendation for Commission Action." The staff found that some of the new information provided by Wagoner, such as disclosures relating to inactive business interests, did not need to be disclosed under AS 39.50. But the staff also found that two omissions

---

1. Formerly the Alaska Conflict of Interest Law. *See* Former AS 39.50 (1998).

did require disclosure—Wagoner's position in the homeowners' association, and a business interest in Wagoner Rental Properties, a real estate proprietorship Wagoner had previously listed as a source of income. Wagoner had previously disclosed the location of the rental properties, but failed to include Wagoner Rental Properties as a business interest in the business interest schedule of the disclosure form. The maximum fine for these omissions, at ten dollars per day from the time the disclosure statement was due until it was complete, was $1,740, per staff calculations. Nevertheless, the staff recommended that the fine be reduced to $150 because Wagoner was an inexperienced filer, his omission of the business interest in Wagoner Rental Properties was inadvertent, and he had cooperated fully with APOC staff by correcting his omissions as quickly as possible.

The APOC commissioners met in early December, considered the audit, and accepted the staff recommendation. APOC issued a December 13 order identifying disclosure violations, and fined Wagoner $150 for the two omissions cited in the staff recommendation. On the same day APOC issued its order, Wagoner wrote to APOC, stating that a review of his financial records with his personal accountant revealed three other omissions that were potentially disclosable: the name of an occasional tenant of Wagoner Rental Properties; a "loan" from his mother used to pay for her convalescent care; and a Small Business Administration loan that had been paid off. Wagoner filed amendments to his disclosure statement reflecting these matters. The APOC commissioners apparently had not taken action as to these amendments at the time the present appeal was commenced in our court.

On December 23 the superior court heard oral argument on the parties' motions to establish the applicable law and for summary judgment. On the day of oral argument Grimm and McGahan filed a proposed second

amended complaint alleging disclosure failures not alleged in their earlier complaint.

By order of December 26, the superior court denied the parties' motions for summary judgment, and ruled that the case would be treated as an election contest. The court ruled that failure to comply with AS 39.50 may constitute a "corrupt practice" under the election contest statute, and that the disclosure requirements did not create a constitutionally impermissible qualification for office. The court also ruled that in construing AS 39.50 together with AS 15.20, the proper question before the court was whether Wagoner's alleged failures to disclose were sufficient to change the result of the election—the standard for contesting an election under AS 15.20.540. The court rejected the plaintiffs' assertion that AS 39.50 should be strictly construed.

Although it applied the general framework of an AS 15.20 election contest to the plaintiffs' challenge, the court ruled that one procedural requirement for a Title 15 election contest—the ten-voter requirement[2]—was "overcome" by the precedence clause in the ballot initiative that created Title 39's Public Official Financial Disclosure Law.[3]

Grimm and McGahan filed a petition for review of the December 26 order. While that petition was pending in this court, the superior court conducted a bench trial on January 2, 2003. On January 6 the superior court issued a memorandum decision and judgment dismissing the plaintiffs' complaint.

The superior court dismissed on alternative theories. The court ruled that if the plaintiffs' challenge were considered an election contest under Title 15, it would fail because the plaintiffs did not show that Wagoner's alleged nondisclosures had an effect on the outcome of the election. The court alternatively ruled that Wagoner had substantially complied with the requirements of AS 39.50, and that he was therefore not subject to forfeiture of office under AS

---

**2.** A Title 15 election contest may be brought by "[a] defeated candidate or 10 qualified voters." AS 15.20.540.

**3.** Section 3 of the 1974 Initiative Proposal No. 2 provides: "In case of conflict between provisions

of this chapter and other provisions contained in the Alaska statutes, the provisions of this chapter shall take precedence." (The published version of the proposal replaced "Act" with "chapter.")

39.50.060(b). Therefore, whether it was treated as a Title 15 election contest or as an AS 39.50 enforcement proceeding, the plaintiffs' challenge failed.

Grimm and McGahan appealed. We ordered accelerated briefing and heard oral argument January 17 because January 21 was the day legislators were to be installed in office.[4] We issued a dispositive order January 17. The order affirmed the superior court's judgment dismissing the plaintiffs' lawsuit. This opinion explains our reasons for affirming.

## III. DISCUSSION

### A. Standard of Review

■ Questions regarding the application, interpretation, and constitutionality of a statute are questions of law to which we apply our independent judgment.[5] We interpret the Alaska Constitution and Alaska Statutes "according to reason, practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters."[6] We also use our independent judgment to review whether the superior court applied an incorrect legal standard.[7]

"Because the public has an important interest in the stability and finality of election results, we have held that 'every reasonable presumption will be indulged in favor of the validity of an election.'"[8]

Under Alaska Civil Rule 52(a) a trial court's findings of fact will not be set aside unless they are clearly erroneous. We will reverse a trial court's findings only if we are left with a definite and firm conviction that the court erred.[9] We apply our independent judgment to the trial court's application of law to undisputed facts.[10]

### B. It Is Not Necessary To Decide Whether AS 39.50.060(b) Provides a Post–Certification Remedy.

■ Plaintiffs claim that AS 39.50.060(b) requires that Wagoner be ordered to forfeit his election. Because plaintiffs' claims were tried after the Division of Elections certified Wagoner's election, the state and amicus curiae Alaska State Legislature argue that the remedies listed in AS 39.50.060(b) are unavailable. Subsection .060(b) provides:

Any person failing or refusing to comply with the requirements of this chapter, in addition to the penalties prescribed, shall forfeit nomination to office and may not be seated or installed in office if the person has not complied. Nominated, hired, or appointed officials, commissioners, chairs, or members of commissions or boards specified in AS 39.50.200(b) may not be confirmed by the legislature if compliance has not been made. In the case of elected officials, the lieutenant governor, or other certifying authority, may not certify a person's nomination for office or the person's election to office if compliance was not made within the time required. The nomination to office or election to office shall be certified to the highest vote getter for that nomination for that office or election to

4. Plaintiffs filed an emergency motion to convert their petition for review (Supreme Court Case No. S–10924) into an appeal. We denied the motion as moot because they had already filed a direct appeal (Supreme Court Case No. S–10953). We treated plaintiffs' motion for expedited consideration of the petition as having been filed in the direct appeal, and set an accelerated briefing schedule for the appeal. We denied plaintiffs' petition January 14, 2003.

5. *McConkey v. Hart*, 930 P.2d 402, 404 (Alaska 1997) ("Questions of the application and constitutionality of [a] statute ... are questions of law subject to this court's independent judgment."); *Todd v. State*, 917 P.2d 674, 677 (Alaska 1996) (explaining that "questions of constitutional law and statutory interpretation" call for the application of our "independent judgment").

6. *Native Vill. of Elim v. State*, 990 P.2d 1, 5 (Alaska 1999).

7. *Guttchen v. Gabriel*, 49 P.3d 223, 225 (Alaska 2002).

8. *Dansereau v. Ulmer*, 903 P.2d 555, 559 (Alaska 1995) (citation omitted) (quoting *Turkington v. City of Kachemak*, 380 P.2d 593, 595 (Alaska 1963)).

9. *Walden v. Dep't of Transp.*, 27 P.3d 297, 301 (Alaska 2001).

10. *Alaska Travel Specialists, Inc. v. First Nat'l Bank of Anchorage*, 919 P.2d 759, 762 (Alaska 1996).

that office who has complied within the times required and who shall be declared nominated or elected. For purposes of this subsection, a person is considered to have complied within the time required if the person complies within 30 days after the due date established by this chapter.

The state argues that as a matter of statutory construction, AS 39.50.060(b) does not authorize any sanction that could operate after the candidate's election is certified. The state contends that the first sentence of the subsection is a "broad declaration of the principle that public officials should not begin office without first complying with the public official financial disclosure requirements," and that implementation of the subsection in this case is governed by the sentence beginning "[i]n the case of elected officials."[11] The state asserts that the certification clause in the third sentence of subsection .060(b) only authorizes courts to prevent the lieutenant governor from certifying the election of a noncomplying candidate.

It is not necessary to decide whether subsection .060(b) provides a post-certification judicial remedy for challenges to "elected officials." Because we hold for other reasons that the superior court did not err in denying the forfeiture remedy, see Parts III.D and E below, we do not have to consider this alternative ground for affirming.

The state and the legislature also argue that we should construe subsection .060(b) narrowly to avoid interfering with the power delegated by the Alaska Constitution to each legislative house to be "the judge of the election and qualifications of its members."[12] The legislature argues that given this delegation, permitting a post-certification judicial forfeiture remedy could implicate separation of powers principles.

Because the result we reach today rejects Grimm and McGahan's arguments on their merits, and consequently does not disturb the certification of Wagoner's election, we do not have to consider whether a different re-sult might have raised separation of powers questions of the sort the legislature discusses in its amicus brief.

## C. We Do Not Need To Decide Whether the Superior Court Properly Applied Title 15 Election Contest Standards.

The superior court order establishing the applicable rule of law stated that a failure to disclose under AS 39.50 could be a "corrupt practice" under AS 15.20.540, and that the proper question before the court was whether Wagoner's omissions were sufficient to change the result of the election. "[A]ny corrupt practice as defined by law sufficient to change the results of the election" is a ground for an election contest under AS 15.20.540.

On appeal Grimm and McGahan argue that the superior court erred in applying Title 15 election contest standards to their AS 39.50.100 action. Whether it erred in doing so presents an ostensibly threshold question, but the superior court's alternative grounds for entering judgment against the plaintiffs make it unnecessary for us to decide this question. The superior court resolved the case by applying Title 15 election contest standards, and alternatively by applying AS 39.50 alone. Because it was proper to dismiss plaintiffs' suit under either approach, we do not need to address whether the superior court properly applied Title 15 election contest standards. For reasons we discuss below, the superior court did not err under either analysis, and we therefore do not decide whether the superior court erred by applying Title 15 standards to this AS 39.50.100 action.

## D. The Lawsuit Cannot Succeed as a Title 15 Election Contest Because Plaintiffs Did Not Demonstrate an Effect on the Outcome of the Election.

■ Applying Title 15 election contest standards to plaintiffs' lawsuit, the superior

---

**11.** AS 39.50 does not define "elected official" in its definitions section—AS 39.50.200—but we hold that a successful legislative candidate is an "elected official" as that term is used in AS 39.50.060(b).

**12.** Alaska Const. art. II, § 12.

court ruled against them for two reasons. First, it found that although Grimm and McGahan demonstrated a "reckless violation" of the disclosure requirements, they did not prove a "knowing violation, as is required by all the other types of corrupt practices which could lead to loss of this election contest." Second, it reasoned that even if the plaintiffs had demonstrated a "corrupt practice," they failed to show that Wagoner's nondisclosures had an effect on the outcome of the election, as AS 15.20.540 requires.

On appeal Grimm and McGahan argue that it was error to apply a Title 15 analysis to their lawsuit, but they do not argue that they demonstrated an effect on the outcome of the election. It is unnecessary to address the superior court's first reason for dismissing the lawsuit under Title 15 because the court's second reason—the absence of a showing that Wagoner's alleged failures had an effect on the outcome of the election—is determinative. The superior court noted in its decision that Grimm and McGahan "acknowledge that they do not have sufficient evidence to prove the high standard of election contest cases. They cannot show that the disclosure failures here were sufficient to change the result of the election." Grimm and McGahan challenge the application of Title 15 election contest standards on appeal, but they do not challenge the superior court's evidentiary findings under this standard. We therefore accept the superior court's finding that Grimm and McGahan did not demonstrate an effect on the outcome of the election. Given this finding, the lawsuit could not succeed as a Title 15 election contest. The superior court did not err in holding that plaintiffs did not satisfy Title 15.

### E. Substantial Compliance Is the Proper Standard Under AS 39.50.060(b).

The superior court alternatively dismissed the lawsuit because it concluded that substantial compliance was the appropriate standard under AS 39.50, and because it found that Wagoner substantially complied with the chapter's disclosure requirements. We consider first whether substantial compli-

ance was the correct standard for enforcing AS 39.50.060(b).

### 1. Neither the statute nor Alaska precedent specifies the standard of compliance.

On appeal Grimm and McGahan argue that AS 39.50.060(b) requires forfeiture for candidates who do not strictly comply with the disclosure requirements of AS 39.50. The state and amicus curiae Alaska State Legislature argue that substantial compliance is the standard for avoiding penalties under subsection .060(b).

The first sentence of AS 39.50.060(b) states that the subsection applies to "[a]ny person failing or refusing *to comply* with the requirements of [the] chapter." (Emphasis added.) The third sentence states that "[i]n the case of elected officials, the lieutenant governor ... may not certify ... the person's election to office if *compliance* was not made within the time required." (Emphasis added.) Neither sentence specifies the level of noncompliance required to justify a penalty under subsection .060(b). And neither indicates whether a failure to strictly comply with the disclosure statutes is sufficient to require forfeiture of office under subsection .060(b). We must therefore determine what standard the legislature intended to be applied when forfeiture is sought under AS 39.50.060(b).

In deciding to apply the substantial compliance standard, the superior court reasoned that this standard was needed to distinguish trivial from non-trivial errors and omissions.

Grimm and McGahan essentially give three reasons why strict compliance should be the appropriate standard. First, they claim that "[t]he unambiguous language of AS 39.50.060(b) is mandatory." We are unconvinced that the language of the statute is clear and mandatory in the way plaintiffs think. Subsection .060(b) does not specify the level of noncompliance necessary to trigger a forfeiture of office. Contrary to plaintiffs' supposition, the statute's statement that any person failing to comply "*shall* forfeit nomination to office and may not be seated or installed," does not indicate an appropri-

ate level of compliance.[13] That the penalty for a violation may be mandatory does not tell us how to decide whether a violation has occurred.

Second, the plaintiffs observe that AS 39.50.030 requires the disclosure of "all" relevant business interests and sources of income, and implicitly argue that a mandate for strict compliance exists in the disclosure requirements themselves. This argument is also unpersuasive. Passages in AS 39.50.030(b) undeniably require that disclosure statements must include "all" or "each" relevant business interest or source of income.[14] But the mandatory and comprehensive language of these requirements in subsection .030(b) does not clarify the level of noncompliance necessary for forfeiture under subsection .060(b). The mandatory and comprehensive language of the disclosure requirements is not surprising. Less demanding language would make it impossible to determine what disclosure is needed and the sufficiency of a given disclosure enforcement. Nonetheless, it remains unclear what level of noncompliance with the disclosure requirements can lead to the forfeiture penalty described in subsection .060(b).[15] The level of compliance required by the disclosure requirements of subsection .030(b) does not specify the level of noncompliance necessary to trigger the penalties described in subsection .060(b).

Third, the plaintiffs assert that we have required strict compliance in analogous situations, and cite *Silides v. Thomas,*[16] *Falke v. State,*[17] and *State, Alaska Public Offices Commission v. Marshall*[18] in support. In *Silides* and *Falke* we applied a strict compliance standard to the filing deadlines for required election disclosures, and noted that election filing deadlines are generally strictly enforced.[19] In *Marshall* we declared void the election of a local municipal officer who filed a preelection disclosure form long after the election.[20] In that case we observed that the candidate's violations "cannot be characterized as trivial," and expressly reserved the question whether a trivial violation could trigger the forfeiture sanction.[21]

These cases are distinguishable from the present situation. We agree with the superior court that there is a difference between strictly enforcing election filing deadlines, and measuring the extent to which a disclosure complies with substantive requirements. Determining whether a candidate's disclosure statement is substantively in compliance with the requirements of the disclosure law is markedly more subtle than determining whether the statement was timely filed. Assessing compliance with filing deadlines is straightforward; a statement is either timely filed or it is not. Given the complexities of assessing substantive compliance, it is not apparent why the strict compliance standard

**13.** AS 39.50.060(b) (emphasis added).

**14.** *See generally* AS 39.50.030. Thus, AS 39.50.030(b)(1) states that disclosure statements *"must* include ... the source of *all* income over $1,000 during the preceding calendar year" and AS 39.50.030(b)(3) states that disclosure statements *"must* include ... the identity and nature of *each* interest owned in *any* business." (Emphasis added.)

**15.** We compare in Part III.E.2 the mandatory and comprehensive language of AS 39.50.030(b) with the requirement in subsection .030(a) that each disclosure statement be an "accurate representation of the financial affairs of the ... candidate."

**16.** *Silides v. Thomas,* 559 P.2d 80 (Alaska 1977).

**17.** *Falke v. State,* 717 P.2d 369 (Alaska 1986).

**18.** *State, Alaska Pub. Offices Comm'n v. Marshall,* 633 P.2d 227 (Alaska 1981).

**19.** *Falke,* 717 P.2d at 373 (disqualifying conflict-of-interest statement filed ten minutes late because "election law filing deadlines are to be strictly enforced"); *Silides,* 559 P.2d at 86–87 (applying substantial compliance standard to financial disclosure statement where statutory requirements were ambiguous and strict compliance impossible for candidate in Juneau, but applying strict compliance to filing appointment of treasurer notification because "statutory candidate election deadlines are normally strictly enforced").

**20.** *Marshall,* 633 P.2d at 235–37 (holding that filing preelection report long after election could not be characterized as trivial so as to avoid application of forfeiture sanction).

**21.** *Id.* at 235 ("[T]hus we need not resolve at this time whether a 'trivial' violation can preclude applying the forfeiture sanction.").

applicable in the election-filing deadline cases should apply here.

Grimm and McGahan also argue that a failure to comply with the substance of AS 39.50.030 is actually a failure to satisfy the filing deadline, because the statute requires disclosure of *all* relevant interests.[22] They reason that Wagoner's disclosure statement was not complete, and was therefore not timely. But this argument tells us nothing about whether the timely filed disclosure was substantively sufficient. Accepting the plaintiffs' logic, any disclosure deficiency no matter how trivial would be an untimely filing.

We reserved in *Marshall* the question whether forfeiture could be triggered by trivial failures to comply with disclosure requirements.[23] That reservation implicitly recognized the difference between substantive compliance and compliance with filing deadlines. We decline to merge substantive compliance with deadline compliance, and conclude that neither the statute nor Alaska precedent specifies the level of substantive compliance required to avoid forfeiture of office under AS 39.50.060(b).

**2. Applying a substantial compliance standard is consistent with the "accurate representation" language of AS 39.50.030(a).**

Grimm and McGahan's private enforcement action under AS 39.50.100 seeking an AS 39.50.060(b) forfeiture necessarily assumed that Wagoner failed to satisfy AS 39.50.030.[24] Subsection .030(a) requires that each disclosure statement "be an *accurate representation* of the financial affairs of the public official or candidate."[25] The criterion for measuring compliance with the substantive requirements of AS 39.50 is therefore whether the disclosure provides an "accurate representation" of the candidate's finances. To apply subsection .060(b)'s penalty provi-

sions, at a minimum a court would have to find that a candidate failed to provide an "accurate representation" under subsection .030(a). Is strict compliance with the disclosure requirements necessary to provide an "accurate representation" of a candidate's finances? The answer is "no."

"Accurate" means variously "in exact conformity to fact," or "conforming closely to a standard."[26] Use of "representation" as part of the statutory standard is more consistent with the latter definition. A "representation" is a depiction or description,[27] and the phrase "accurate representation" implies close conformity rather than absolute precision. An "accurate representation" does not necessarily connote or imply flawless perfection; it can be achieved with something less than absolute exactitude.

We therefore read "accurate representation" in subsection .030(a) as not precluding a substantial compliance standard for enforcement of subsection .060(b). A candidate can "comply" with subsection .030(a) for the purposes of subsection .060(b) without strictly complying with the substantive disclosure requirements.

**3. Substantial compliance is consistent with the purposes of the chapter.**

Enforcing AS 39.50.060(b) for failing to substantially comply with the disclosure requirements is consistent with the statutorily declared purposes of the disclosure statute. Alaska Statute 39.50.010(a) lists these purposes:

(1) to discourage public officials from acting upon a private or business interest in the performance of a public duty;

(2) to assure that public officials in their official acts are free of the influence of undisclosed private or business interests;

**22.** *See supra* note 14.

**23.** *Marshall,* 633 P.2d at 235.

**24.** AS 39.50.100 permits "[a] qualified Alaska voter [to] bring a civil action to enforce any of the sections of this chapter." AS 39.50.060(b) provides a penalty for "[a]ny person failing or refusing to comply with the requirements of [the]

chapter." The disclosure requirements of AS 39.50 are set out in section .030.

**25.** AS 39.50.030(a) (emphasis added).

**26.** Webster's II New College Dictionary 8 (1995).

**27.** *Id.* at 941.

(3) to develop public confidence in persons seeking or holding public office, enhance the dignity of the offices and make them attractive to citizens who are motivated to public service; and

(4) to develop accountability in government by permitting public access to information necessary to judge the credentials and performance of those who seek and hold public office.

These purposes call for an "accurate representation" of a candidate's financial interests, but they do not require or imply absolute precision. In the context of subsection .060(b), mandatory forfeiture for public officials who do not strictly comply with the substantive disclosure requirements is not necessary to effectuate these goals.

■ Grimm and McGahan argue that "[d]isclosure of the candidate's financial and business interests is required so that voters can make an informed decision at the ballot box." Public access to accurate information is necessary to ensure governmental integrity, but minor errors in disclosure statements do not interfere with the public's ability to judge the credentials of candidates for public office. It would also seem that the expressed purpose of attracting citizens to public office would be defeated if trivial or inconsequential errors could deprive voters of the officers they elected.[28]

Furthermore, subsection .010(b)(5) asserts that "reasonable disclosure requirements do not have the effect of chilling the exercise of the right of a qualified person to seek or hold public office." The prospect of mandatory forfeiture of elected office despite substantial compliance with AS 39.50 could chill interest in public office.

### 4. A strict compliance standard would thwart voter intent in contravention of Alaska law.

We have often stated that "every reasonable presumption will be indulged in favor of the validity of an election."[29] There is a "well-established policy" favoring the stability of election results in the face of technical errors or irregularities not affecting election results.[30] We have explained this policy noting that "[c]ourts are reluctant to permit a wholesale disfranchisement of qualified electors through no fault of their own, and '[w]here any reasonable construction of [a] statute can be found which will avoid such a result, the courts should and will favor it.'"[31]

In light of this policy, plaintiffs in Title 15 election contests carry a heavy burden. We have defined "malconduct" under AS 15.20.540 as "a significant deviation from statutorily or constitutionally prescribed norms."[32] And as discussed previously, to maintain an election contest under AS 15.20.540, plaintiffs must demonstrate an effect on the outcome of an election.

■ Rigidly applying a forfeiture sanction for inconsequential violations is inconsistent with the presumptive validity of election results, and the "well-established policy" favoring election results in the face of technical irregularities.[33] Furthermore, applying a forfeiture sanction for failures to strictly comply with disclosure requirements would significantly undermine the high burdens we have applied in election contests, and the statutorily required showing of an effect on the outcome of the election.[34] A strict compliance standard under AS 39.50.060(b) would thwart voter intent in contravention of Alaska law. Substantial compliance is more consistent with Alaska's election jurisprudence.

28. *See* AS 39.50.010(a)(3).

29. *See, e.g., Dansereau v. Ulmer*, 903 P.2d 555, 559 (Alaska 1995) (quoting *Turkington v. City of Kachemak*, 380 P.2d 593, 595 (Alaska 1963)).

30. *Carr v. Thomas*, 586 P.2d 622, 625–26 (Alaska 1978).

31. *Id.* at 626 (quoting *Reese v. Dempsey*, 48 N.M. 485, 153 P.2d 127, 132 (1944)).

32. *Hammond v. Hickel*, 588 P.2d 256, 258 (Alaska 1978) (relying on *Boucher v. Bomhoff*, 495 P.2d 77, 80 (Alaska 1972)).

33. *See Dansereau*, 903 P.2d at 559; *Carr*, 586 P.2d at 626.

34. *See Hammond*, 588 P.2d at 258; AS 15.20.540.

Of course AS 15.20 contains substantive provisions that are not duplicated in AS 39.50. But it would be anomalous to impose the harsh remedy of forfeiture of elected office under AS 39.50.060(b) for an inconsequential disclosure omission given the high causal standard applicable to election contests.

### 5. A substantial compliance standard is supported by Alaska Public Offices Commission regulations.

We also note that APOC regulations support the adoption of a substantial compliance standard. Given the lack of statutory specificity discussed above, APOC regulations serve as a useful interpretive aid.

APOC's "[p]rocedures for incomplete statements from candidates for state elective office" specify that the lieutenant governor may not certify the election of a candidate who "has not supplied required information on a *major* source of income, interest in real property, business interest, loan, or trust."[35] (Emphasis added.) Furthermore, 2 Alaska Administrative Code (AAC) 50.127(d) states that if "information discovered after the withdrawal-of-candidacy deadline indicates that a candidate ... has failed to comply *substantially* with the requirements of AS 39.50 ... the staff of the commission shall undertake a preliminary investigation." (Emphasis added.) Moreover, 2 AAC 50.110(c)(1) states that APOC staff may recommend a ten dollar per day fine if the filer "failed to comply *substantially* with AS 39.50 ... by failing to report in the filer's statement a *major* source of income, interest in real property, business interest, loan, trust, or other *substantial* financial interest." (Emphasis added.)

Agency interpretations are not binding on our interpretation of a statute,[36] but APOC's regulations provide useful guidance here. In the analogous context of administrative appeals, when a question of law involves agency expertise we will "defer to [an] agency's interpretation of a law unless it is unreasonable."[37] APOC's adoption of a substantial compliance standard implies that APOC has interpreted its enabling statute to require that standard or at least to be consistent with that standard. Further, it would seem incongruous to impose a forfeiture sanction if there is substantial but not strict compliance, when substantial compliance is the standard APOC has adopted in deciding whether to undertake an investigation or impose a civil penalty.

Moreover, both the regulations and AS 39.50 contemplate a graduated response for disclosure violations. Under 2 AAC 50.110 the civil penalty for incomplete disclosures increases after fifteen days of lateness, and the maximum per diem fine is available for continuous failures, or failures to comply substantially with the disclosure requirements.[38] Alaska Statute 39.50.060(a) provides criminal penalties for officials who "refuse[ ] or knowingly fail[ ]" to comply, and sections .070 and .080 prevent confirmation of executive officials and commissioners until they comply. The opportunity to cure disclosure defects in sections .070 and .080 for officials subject to subsection .060(b), and the criminal penalties of subsection .060(a), indicate a measured approach to disclosure violations.[39] Context implies that forfeiture of office is only available for more serious offenses. Imposing a forfeiture sanction for failing to strictly comply would produce disproportionate results under this enforcement regime. Grimm and McGahan argue that applying a substantial compliance standard would "very likely cre-

---

**35.** 2 Alaska Administrative Code (AAC) 50.127(c) (2003).

**36.** *Storrs v. State Med. Bd.,* 664 P.2d 547, 552 (Alaska 1983).

**37.** *Lopez v. Adm'r, Pub. Employees' Ret. Sys.,* 20 P.3d 568, 570 (Alaska 2001). *See also Storrs,* 664 P.2d at 552 ("[A] statutory construction adopted by those responsible for administering a statute should not be overruled in the absence of

'weighty reasons.'" (quoting *Kelly v. Zamarello,* 486 P.2d 906, 910 (Alaska 1971))); *Sanford v. State,* 24 P.3d 1263, 1266 (Alaska App.2001) (looking to administrative agency's interpretation of statute in attempting to resolve ambiguity in statute).

**38.** 2 AAC 50.110 (2003).

**39.** *See* AS 39.50.060, .070, .080.

ate more, rather than fewer, conflicts in the enforcement of election filing deadlines." But applying a strict compliance standard for the forfeiture penalty is not consistent with the enforcement regime. We also think that reserving the post-election forfeiture penalty for failures to substantially comply with the disclosure requirements will not unduly burden APOC or the courts in enforcing the disclosure law.

For the reasons we discuss in Parts III. E.1–5, we conclude that substantial compliance is the appropriate standard for imposing the forfeiture remedy of AS 39.50.060(b).

### F. The Superior Court Did Not Clearly Err in Finding that Wagoner Substantially Complied with the Requirements of AS 39.50.

■ Having determined that substantial compliance is the appropriate standard under AS 39.50.060(b), we now consider whether it was error to find that Wagoner substantially complied with the disclosure requirements. On appeal Grimm and McGahan argue generally that the superior court erred in finding Wagoner's nondisclosures to be trivial; they specifically challenge some of the superior court's determinations regarding particular allegations of nondisclosure.

■ Deciding whether a candidate substantially complied with AS 39.50 in the context of subsection .060(b) requires both factual and legal determinations. A trial court must determine whether a candidate violated the disclosure laws, and also whether any possible violations rendered a candidate out of substantial compliance. The overarching question is whether the disclosures provided an "accurate representation" of the candidate's finances.

■ In making this determination a trial court may permissibly look to the opinion of the administrative agency responsible for enforcing the disclosure law.[40] APOC has both administrative expertise and the dedicated responsibility of policing disclosures under

AS 39.50. Whether APOC found a disclosure failure, fined a candidate, or assessed a reduced penalty, for example, is relevant in analyzing a candidate's compliance with AS 39.50.

### 1. The superior court did not err in finding that several alleged failures did not require disclosure.

■ Grimm and McGahan's complaint alleged that Wagoner failed to disclose eight different interests. The superior court found that six of the eight interests alleged related to interests Wagoner was not required to disclose.

Counts I, V, and VII of the complaint alleged that Wagoner failed to disclose interests in Got Fish, Nuka Island Fishing Charters, and Chisik Island Charters, respectively. On appeal the plaintiffs argue that the superior court erred in concluding that these interests did not require disclosure because AS 39.50.030 requires the disclosure of all business interests, regardless of activity, and because there was business activity for Got Fish. The activities alleged for Got Fish include obtaining a business license and opening a checking account.

Following its review of Wagoner's disclosures, APOC staff noted that "[t]he Commission has never required inactive businesses be reported." APOC staff considered that Wagoner obtained a business license for Got Fish in order to obtain a checking account, but staff concluded that Got Fish, Nuka Island Fishing Charters, and Chisik Island Charters were inactive in the reporting year, and did not require disclosure. The APOC commissioners agreed, and did not find disclosure violations for these three interests.

At trial the superior court considered testimony from Wagoner and other evidence relating to the alleged business interests. Relying in part on APOC's review of Wagoner's omissions, the superior court determined that the interests alleged in Counts I, V, and VII did not require disclosure. The superior court distinguished between a candidate's ob-

---

**40.** 2B Norman J. Singer, Sutherland Statutory Construction § 49:03 (6th ed. 2000) ("[P]ractical interpretation of a statute by the ... officers charged with its administration and enforcement

... constitutes an invaluable aid in determining the meaning of a doubtful statute."). *See also* cases cited *supra* note 37.

ligation to disclose an unprofitable business, and a candidate's permissible omission of a non-operating business. In light of APOC's determination, the superior court did not err in ruling that these business interests did not require disclosure.

■ Count II of plaintiffs' complaint alleged that Wagoner failed to disclose a partnership with the Navarre family. The Navarres and the Wagoners co-own property in California. APOC staff noted that Wagoner reported his fifty percent ownership interest in the property, and stated that "[t]he law does not require that the filer name other non-family owners of the property." APOC staff did not find a disclosure failure in Wagoner's omission of the Navarres as co-owners, and the commissioners agreed.

The superior court stated that "one might infer an implied partnership" from the joint ownership, but ruled that Wagoner's accurate reporting of his ownership status was sufficient under the statute. The superior court considered testimony from Wagoner and APOC staff, and did not find the existence of a business interest that required disclosure.

On appeal Grimm and McGahan argue that the "implied partnership" was an oral partnership agreement under the Uniform Partnership Act, that its existence was evidenced by its checking account, and that Wagoner needed to disclose his dealings with the Navarre family as a partnership interest. In light of APOC's determination, the superior court did not err in ruling that Wagoner did not need to report a partnership with the Navarre family. Wagoner's disclosure of his own financial interest in the property would reveal any potential conflict that might also affect the interests of the co-owner. The plaintiffs suggest that disclosing the partnership was necessary to reveal Wagoner's relationship to the Navarre family, and argue that "Wagoner's status as a Republican Moderate would have been called into question" because "[t]he Navarres are historically strong democratic candidates in the state." But AS 39.50.030(b)(4) requires the disclo-

sure of interests in real property owned by the candidate, the candidate's spouse, spousal equivalent, or child; it does not require the disclosure of non-family co-owners or political affiliations. ·

■ Count IV of the complaint alleged that Wagoner failed to disclose his membership in a Kenai fisherman's cooperative. APOC staff noted that "[t]he Kenai fisherman's coop was not founded until June 2002" and "therefore, it was not reportable on Mr. Wagoner's 2002 statement." The APOC commissioners agreed with the staff recommendation, and did not find a disclosure violation for Wagoner's omission of his membership in the cooperative.

The superior court concluded that Wagoner was not required to disclose his cooperative membership, because the evidence indicated that the cooperative was not founded until after the reporting year. The plaintiffs do not specifically challenge this ruling on appeal. Assuming their general argument encompasses this ruling, we conclude that the superior court did not err in ruling that Wagoner did not need to disclose his membership in the cooperative. The disclosure law only requires reporting of all information from the "preceding calendar year." [41]

■ Count VIII of the plaintiffs' complaint alleged that Wagoner failed to disclose his interest in a commercial fishing business, a commercial fishing vessel, and Alaska limited entry permits. APOC staff noted that "Wagoner properly reported his sources of income from commercial fishing and ... is not required to report his fishing vessel or limited entry permits." The APOC commissioners agreed.

The superior court ruled that the facts and the law supported APOC's conclusion that these interests did not require disclosure. The plaintiffs do not specifically challenge this determination on appeal. They argue instead that they did not know the name of Wagoner's fishing business when they filed their first amended complaint, and sought to

---

**41.** AS 39.50.030(b)(1)-(8). The disclosure statement Wagoner completed called for the disclosure of business interests held "between January 1, 2001 and December 31, 2001," and other interests for "calendar year 2001."

amend this count in their proposed second amended complaint which the court rejected. They claim on appeal that Wagoner's fishing business should have been disclosed under the name Wagoner Enterprises—an allegation not made in their first amended complaint.[42] Given the allegation made in Count VIII, the superior court did not err in determining that the fishing vessel and entry permits did not require disclosure.

And contrary to Grimm and McGahan's contentions, we note that any possible error with respect to Counts I, II, IV, V, VII, or VIII would not necessarily constitute reversible error. Because Grimm and McGahan have not convinced us that different legal conclusions were required, we hold that the superior court did not err in determining that the omissions alleged in these counts did not require disclosure. But even if there were a legal error regarding one of these omissions, it would not invalidate the court's findings of substantial compliance. Considering the relative insignificance of these alleged violations, the superior court did not clearly err in finding that Wagoner substantially complied with AS 39.50 for purposes of subsection .060(b).

### 2. The superior court did not err in finding that Wagoner's disclosure violations were trivial.

Count III of the complaint alleged that Wagoner failed to disclose that he was president of Vista Del Jacinto Homeowners Association, a homeowners' association for a condominium he owns in California. Wagoner's initial disclosure statement listed the condominium as a real property interest, but the disclosure law requires filers to report if they are officers or directors of non-profit corporations.[43] Wagoner failed to list his position in the homeowners' association, and APOC staff thought that this was a violation of the

disclosure requirements. The APOC commissioners agreed.

Count VI alleged that Wagoner failed to disclose his interest in Wagoner Rental Properties, the company under which he operates his real estate rental activities. Wagoner reported the location of properties managed under the business and the tenants; he also reported that the properties were a source of income, but he failed to list the name of the business as a business interest. APOC staff concluded that failing to list Wagoner Rental Properties as a business interest violated the disclosure requirements. The APOC commissioners agreed.

APOC staff concluded that these two omissions justified assessing a fine, but recommended that it be reduced because Wagoner was an inexperienced filer, because his omissions were inadvertent, and because he cooperated fully with APOC staff to correct his omissions. The APOC commissioners assessed a civil penalty for Wagoner's failures, but reduced his penalty for reasons specified in the staff recommendation and because Wagoner listed the location of the properties and sources of income.

The superior court considered testimony from Wagoner and other evidence, and considered the omissions alleged in Counts III and VI in the context of Wagoner's entire disclosure statement. The court ruled that the alleged omissions were violations of the disclosure requirements, but that they were "relatively trivial." The court found that "[t]he disclosures that were made overlapped the areas missed and provided sufficient basis for interested voters to understand the candidate's interests." The court ruled that the violations "do not justify application of AS 39.50.060(b)," and that Wagoner substantially complied with AS 39.50 despite his disclosure violations.

---

42. Because allegations relating to Wagoner Enterprises were not included in the complaint the court considered, we do not address the legal status of Wagoner's disclosures for this business interest. We consider the superior court's refusal to grant leave to amend plaintiffs' complaint below in Part III.G. We note, however, that Wagoner Enterprises is listed on Wagoner's initial disclosure statement as a source of income. Any possible failure with respect to Wagoner Enterprises was very probably inconsequential; there would have been little or no incremental benefit of listing Wagoner Enterprises as a business interest, because it was listed as a source of income.

43. AS 39.50.030(b)(2).

On appeal Grimm and McGahan argue that AS 39.50.060(b) and the disclosure requirements should be strictly enforced, but they do not convince us that the superior court clearly erred in finding that Wagoner substantially complied with the disclosure requirements. In a conclusory fashion Grimm and McGahan mention that Wagoner's failures "cannot be characterized as trivial," but they do not substantiate this proposition.

Wagoner's violations had little marginal consequence—i.e., complete disclosure would have produced no significant marginal benefit for the voting public. Both failures related to interests partially disclosed in other portions of his disclosure statement. Failing to list the homeowners' association despite listing the relevant property, and failing to disclose the name of the rental business despite listing the properties as a source of income, were immaterial omissions because the incremental disclosure provided by correctly completing the form would have been small. We also note that the APOC staff recommendation and the APOC order reduced Wagoner's fine to a nominal $150. In light of these factors, the superior court did not err in finding that Wagoner's failures were trivial. It was accordingly not clear error to rule that Wagoner substantially complied with AS 39.50 for the purposes of subsection .060(b).

In conclusion, Grimm and McGahan's suit fails under AS 39.50 because substantial compliance is the appropriate standard under AS 39.50.060(b), and because the court did not err in finding that Wagoner substantially complied with the disclosure requirements.[44] And because the superior court did not err in holding that plaintiffs could not prevail under either Title 15 or Title 39, we need not decide whether the superior court erred in applying Title 15 election contest standards to this Title 39 enforcement action.

### G. The Superior Court Did Not Err in Denying the Motion To File a Second Amended Complaint.

■■■ In general, leave to amend pleadings should be liberally granted.[45] But trial courts have discretion to grant or deny leave, and we will reverse a trial court's decision only if we are left with a definite and firm conviction that the trial court erred.[46]

Grimm and McGahan sought leave to file a second amended complaint at the December 23, 2002 argument on cross-motions for summary judgment. The superior court denied leave to amend for several reasons. The court considered the general preference for allowing liberal amendment, especially in early stages of litigation, but noted that as parties got closer to trial the policies against amendment carry greater weight. The superior court considered prejudice to the opposing parties, and observed that fairness concerns are amplified if there is little time to prepare for trial. The court ultimately ruled that "[b]ecause of the need to expedite trial and preparation for election contest cases, and the statutory deadline for complaints, the court will allow amendment any time within the 10 days following certification but not after." The superior court's ten-day rationale was grounded in its reading of Title 15 election contest standards together with AS 39.50.[47]

Grimm and McGahan argue on appeal that the superior court abused its discretion in denying them leave to file a second amended complaint. They argue that their proposed second amended complaint listed nondisclosures newly revealed in discovery, and that the discovery schedule prevented plaintiffs

---

**44.** Grimm and McGahan also argue that the superior court erred in finding that Wagoner was "forthcoming" in providing information to APOC. This was a permissible finding given the superior court's opportunity to assess Wagoner's credibility and its permissible reliance on APOC's analysis. But to the extent the superior court found that Wagoner voluntarily disclosed his financial interests, that finding was immaterial to the superior court's ruling on substantial compliance.

**45.** *O'Callaghan v. Rue*, 996 P.2d 88, 100 (Alaska 2000); *see also* Alaska R. Civ. P. 15(a) (noting that "leave [to amend pleadings] shall be freely given when justice so requires").

**46.** *O'Callaghan*, 996 P.2d at 100.

**47.** AS 15.20.550 states that an election contest "may be brought in the superior court within 10 days after the completion of the state review."

from alleging these omissions earlier. Furthermore, they argue that the superior court provided no basis for applying the Title 15 deadline, that the superior court failed to balance the hardships, and that the superior court made no finding that amendment would prejudice the defendants.

We do not need to consider the superior court's Title 15 rationale for the denial; other factors fully justify the denial. The superior court based its decision on prejudice to the opposing party, the late stage of the litigation, and the expedited trial schedule. We have noted that courts are normally reluctant to allow amendments after summary judgment motions have been filed.[48] In this case plaintiffs sought leave to amend at oral argument on cross-motions for summary judgment.

Despite the recent discovery, the highly accelerated schedule culminating in the expedited trial justifies the superior court's ruling. The court made very commendable efforts in conducting the trial and resolving the case with great dispatch. A highly expedited trial schedule was necessary to ensure an opportunity for appellate review before the legislative session was to open on January 21. Refusing to allow amendment under these circumstances was not an abuse of the superior court's discretion.

### H. We Need Not Decide Whether AS 39.50.060(b) Includes a Willfulness Requirement.

The superior court stated near the end of its memorandum decision that "[t]he facts do not demonstrate the *knowing* filing of an incomplete disclosure statement." (Emphasis added.) On appeal Grimm and McGahan take this sentence out of context, and suggest that the court erroneously read a scienter requirement into AS 39.50.060(b). Plaintiffs conclude that the court was "confus[ed]" about the required mental states, given the court's earlier conclusion that plaintiffs demonstrated a "reckless violation."

It does not appear that the superior court's analysis of the merits depended on a requirement that plaintiffs prove a "knowing" violation. But even if the reference revealed some analytical error, it only could have affected the "corrupt practice" issue relevant to a Title 15 challenge. Because the court had an independent reason for dismissing plaintiffs' action as a Title 15 election contest—the plaintiffs' failure to prove an effect on the outcome of the election—any possible error regarding mental state is harmless. And there is no reason to think Wagoner's mental state had anything to do with the superior court's conclusion that Wagoner substantially complied with the disclosure requirements of AS 39.50.

## IV. CONCLUSION

We therefore AFFIRM the judgment of the superior court.[49]

MATTHEWS, Justice, not participating.

---

**48.** *O'Callaghan,* 996 P.2d at 101; *Jennings v. State,* 566 P.2d 1304, 1312 (Alaska 1977).

**49.** Our holding also makes it unnecessary to consider Wagoner's argument that applying a forfeiture sanction to non-incumbent candidates would result in an equal protection violation. We observe that although Wagoner asserts on appeal that "Title 24 does *not* include a forfeiture penalty for omissions," AS 24.60.250 includes forfeiture language similar to that found in AS 39.50.060(b).