**WESTERN STATES FIRE PROTECTION COMPANY of Alaska, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, Anchorage Fire Department, Fire Protection Division, Appellee.**

No. S–11895.

Supreme Court of Alaska.

Nov. 9, 2006.

**23.** *Id.*

**24.** *Id.* § 531.

Lea E. Filippi and Barbra Z. Nault, Bankston Gronning O'Hara, P.C., Anchorage, for Appellant.

Dean T. Gates, Assistant Municipal Attorney, and Frederick H. Boness, Municipal Attorney, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

More than one hundred acoustic tiles hang from the ceiling of the auditorium at A.J. Dimond High School in Anchorage. The acoustic tiles hang below the fire sprinklers. The fire department determined that the tiles obstructed too much water from the sprinklers. The board of building examiners, finding that the sprinkler installation complied with local fire codes, overruled the fire department. The superior court reversed the board's decision and the sprinkler installer now appeals. Because interpretation of the fire code calls for the board's technical expertise, we ask only whether the board's decision has a rational basis in law and fact. However, even under this deferential standard of review, we hold that the board failed to determine whether the sprinklers and the tiles in their current configuration actually permit adequate water coverage. We therefore vacate the decision of the board and remand the case to the board for reconsideration, which may include taking additional evidence.

## II. FACTS AND PROCEEDINGS

Western States Fire Protection Company of Alaska (Western States) designed and installed the sprinkler system in the new "auditeria" of A.J. Dimond High School. Overhead in the auditeria more than one hundred acoustic tiles, known as "clouds," hang ap-

proximately twelve feet below the ceiling. Each of the clouds is four feet wide and eight to twelve feet long. Western States's technical drawings, which the Anchorage Fire Department preliminarily approved, show the positions of the clouds relative to the sprinklers. The parties disagree on the distance between the clouds. Western States asserts that the clouds "are spaced roughly two feet apart," referring to photographs of the auditeria ceiling and technical drawings. However, based on the same drawings, the fire department asserts that the clouds are only six inches apart.[1] In any case, Western States conceded that the sprinklers and clouds are not configured to take advantage of the open gaps between the clouds.[2] After the clouds and sprinklers were installed, the fire department inspected the auditeria and issued a fire inspection notice expressing the department's concern over the number of clouds and their position below the sprinkler heads. According to the inspection notice, the clouds would disrupt the sprinkler discharge pattern, "resulting in inadequate coverage" of any fire erupting below the clouds. The fire marshal refused to approve the sprinklers until Western States remedied the situation by "remov[ing] obstructions and/or add[ing] additional sprinkler heads as necessary."

Western States appealed the fire department's decision to the Anchorage Board of Building Regulation Examiners and Appeals.[3] At hearings before the board, Western States pointed out that before construction it showed its sprinkler installation plans to five different entities (including the fire marshal), who signaled their approval. According to Western States, because of the clouds, only sixty-eight percent of the "floor coverage is open to water application." Western States also indicated that the sprinklers are placed closer together than legally required, although the resulting additional water they provide would not make up for the water blocked by the clouds. Western States additionally noted that fire alarms and a nearby fire station provide backups for the sprinkler system. Although Western States was asked several questions about water flow and coverage during the hearing, it is unclear from the record whether the board reached any conclusion about the amount of water actually capable of reaching the floor from the sprinklers and whether the amount would provide adequate protection against fire hazards in the auditeria.

The fire department's fire inspector urged the board to find "that the sprinklers [should] be extended through or between the acoustic panels to a level that [will] extend the coverage to the area below, in other words, to the floor area below, which is where the hazard is." Otherwise, according to the inspector, the sprinkler system fails to comply with the National Fire Protection Association standard for sprinkler systems (NFPA 13)[4] as incorporated into Anchorage's fire code.[5] The fire department submitted a letter from the manufacturer of the acoustic clouds, which stated that similar installations, including one at a high school in Fairbanks, were required to include additional sprinklers either in the gaps between the clouds or penetrating the clouds themselves.

---

1. In its reply brief, Western States maintains that the clouds are "more than six inches apart."

2. According to Western States, "[T]he sprinklers are not aligned to the gap" between the clouds; rather, the sprinklers were configured to avoid obstructions above the clouds "at the roof level" of the auditeria.

3. The board is composed of eleven building experts. *See* AMC 23.10.204.3.

4. *See infra* note 18 for the text of relevant provisions of NFPA 13.

5. According to UNIFORM FIRE CODE § 101.3 (1997) (formerly incorporated into the Anchorage fire code by AMC 23.45.100): "[C]ompliance with applicable standards of the National Fire Protection Association ... shall be deemed as prima facie evidence of compliance with the intent of this code.... [But][n]othing herein shall derogate from the power of the chief to determine compliance....."). This text is now incorporated into the Anchorage fire code by reference to the International Fire Code. *See* AMC 23.05.010; INT'L FIRE CODE § 102.7 (2003). *See* NAT'L FIRE PROT. ASS'N STANDARD 13 (NFPA 13) § 5.5–5 (1999) (amended 2002). The 2002 amendments to NFPA recodified section 5.5–5 as section 8.5.5.2 although the substantive provisions remain the same. In this opinion we refer to the 1999 version of NFPA 13.

In deliberations after the hearing, the board members discussed NFPA 13's four-foot benchmark for sprinkler obstructions in connection with the four-foot width of the acoustical tiles.[6] According to one board member, "over four feet is not the same thing as four feet or more, and this is pretty clear[,] it says over four feet." Following this comment, another board member made a motion to grant Western States's appeal, remarking, "That's our only option." The board then voted unanimously that Western States had complied with NFPA 13.

The fire department appealed the board's decision to the superior court. Anchorage Superior Court Judge Philip R. Volland reversed the board's decision, applying the substitution of judgment standard of review. According to the superior court, substitution of judgment was appropriate, since "[t]he interpretation of such non-technical terms as 'continuous,' 'non-continuous,' 'fixed obstructions,' and 'over four feet wide' ... does not involve agency expertise or broad policy formulations." The superior court determined that the board's literal interpretation of NFPA 13 produced an absurd result, since the sprinkler-cloud arrangement might technically comply with NFPA 13 while negating the standard's purpose, "which is to ensure that a sufficient amount of water from the sprinkler reaches the hazard."[7] Western States appeals.

## III. STANDARD OF REVIEW

Where the superior court acts as an intermediate court of appeal from an administrative decision such as the board's, we review the administrative decision directly.[8] When the board's interpretation of law turns on its technical expertise or "the determination of fundamental policies within the scope of the [board's] statutory function,"[9] we inquire whether the interpretation has a rational basis. As we stated in *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, two circumstances generally call for rational basis review: (1) "where the agency is making law by creating standards to be used in evaluating the case before it and future cases," and (2) "when a case requires resolution of policy questions which lie within the agency's area of expertise and are inseparable from the facts underlying the agency's decision."[10] When applying the rational basis test, we ask whether the decision is "supported by the facts and has a reasonable basis in law."[11]

The rational basis test may be appropriate even when interpreting commonly used words, if there are technical and policy reasons to defer to the administrative agency, and especially if the legislature has granted the agency broad discretion. For example, in *Matanuska–Susitna Borough v. Hammond*, we applied the rational basis test to a decision of the Department of Community and Regional Affairs, and deferred to its interpretation of the statutory term "population."[12] We affirmed the department's interpretation of "population" for the sake of revenue sharing and tax limitation in that case because the legislature had granted broad discretion to the department by permitting the department to make a population determination based on data "which, in the judgment of the department, is reliable."[13]

Similarly, in this case, although the disputed provisions of NFPA 13 contain common terms like "continuous" and "noncontinuous," they also contain open-ended terms whose

---

6. NFPA 13 § 5–5.3.1 provides, in part, that "[s]prinklers shall be installed under fixed obstructions over 4 ft. (1.2 m) wide...."

7. NFPA 13 § 5–5.5.

8. *Raad v. Alaska State Comm'n for Human Rights*, 86 P.3d 899, 903 (Alaska 2004); *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987).

9. *Tesoro*, 746 P.2d at 903.

10. *Id.*

11. *Id.*

12. *Matanuska–Susitna Borough v. Hammond*, 726 P.2d 166, 175 (Alaska 1986) ("[T]he reasonable basis standard is the appropriate standard of review here because both agency expertise and fundamental policy decisions are involved in the determination of 'population,' and because the legislature intended to place the decision in the hands of the department.").

13. *Id.* at 169 (quoting former AS 29.88.015). *See id.* at 175–76, 176 n. 17.

interpretation requires technical expertise. For instance, the board, and not the judiciary, is qualified to determine whether the size of the clouds relative to their location will impair the functioning of the sprinklers, such that the clouds prevent "adequate coverage."[14] NFPA 13's terminology permits the building inspector and the board to determine compliance on a case-by-case basis. For instance, it states that *"[i]n some situations,* the obstruction cannot be avoided, and additional sprinklers are necessary to compensate for areas under the obstruction that would not receive adequate coverage."[15] Additionally, a four-foot wide obstruction (that is, one that is not "over four feet") does not automatically comply, since "[t]he size at which obstructions become too large to ignore is *typically* 4 ft (1.2 m)."[16] Finally, the Anchorage Assembly has granted broad discretion to the board. According to AMC 03.60.050:

> [The board] may hear and decide de novo all matters appealed and may exercise independent judgment as to the weight of evidence supporting or refuting the findings of the administrative official ... from whose decision the appeal is taken, and may exercise independent judgment on legal issues raised by the parties.

With the relatively deferential rational basis test in mind, we now turn to the board's decision in order to decide whether the board correctly determined that the sprinkler installation complied with the fire code.

## IV. DISCUSSION

■ The fire department disputes the board's conclusion that the sprinkler system complies with the fire code, although it does not dispute the board's finding that the clouds are four feet wide and the board's determination that NFPA 13 determines the sprinklers' proper configuration in relation to them. The "overall objective" of NFPA 13 "is to ensure that a sufficient amount of water from the sprinkler reaches the hazard."[17] According to this standard, additional sprinklers are required where a horizontal obstruction more than four feet wide is situated more than eighteen inches below the original sprinkler.[18] Yet this rule's converse is not necessarily true; i.e., the rule does not imply that an obstruction exactly four feet wide (and more than eighteen inches below the original sprinkler) will never require an additional sprinkler below it. Contrary to Western States's argument, the sprinkler requirement for obstructions more than four feet wide does not establish that obstructions, like those at issue here, that are exactly four feet wide or less than four feet wide, are never subject to the requirements.[19] The

---

14. NFPA 13 § A–5–5.3.

15. *Id.* (emphasis added).

16. *Id.* § 5–5.5.3.1 (emphasis added).

17. *Id.* § 5–5.5.

18. This conclusion follows from the NFPA 13 sections quoted below.
   NFPA 13 § 5–5.5.3 provides:
   Continuous or noncontinuous obstructions that interrupt the water discharge in a horizontal plane more than 18 in. (457 mm) below the sprinkler deflector in a manner to limit the distribution from reaching the protected hazard shall comply with [this section].
   According to § A–5–5.3:
   Once the sprinkler discharge pattern is developed, obstructions in the horizontal plane can prevent the sprinkler discharge from reaching the protected hazard. In some situations, the obstruction cannot be avoided, and additional sprinklers are necessary to compensate for areas under the obstruction that would not receive adequate coverage.

According to § 5–5.5.3.1:
Sprinklers shall be installed under fixed obstructions over 4 ft (1.2 m) wide such as ducts, decks, open grate flooring, cutting tables, and overhead doors.... The size at which obstructions become too large to ignore is typically 4 ft (1.2 m).

19. *See, e.g., Ward Bros. Co. v. Zimmerman,* 89 Ind.App. 353, 166 N.E. 545, 546 (1929):

[A]ppellant sought to have the court instruct the jury that ... a speed of less than 35 miles an hour was prima facie not negligent, this being urged in view of the statute ... making speed greater than 35 miles per hour prima facie negligence. It is true that, by the statute referred to, a speed in excess of the limit there fixed is prima facie negligent, but the converse is not necessarily true. The statute provides that no person shall operate a motor vehicle on a public highway at a speed greater than is reasonable and prudent, and it is easily conceivable that one might violate this provision of the statute, and still be well within the prima facie limit fixed.

Anchorage Municipal Code is consistent with this interpretation, since technical compliance with the NFPA leads to a rebuttable presumption rather than a conclusion that the sprinkler system provides adequate coverage.[20] NFPA 13 also covers obstructions four feet wide or less that fail to permit adequate sprinkler coverage. It provides, "The size at which obstructions become too large to ignore is *typically* 4 ft (1.2 m)."[21] This indicates that obstructions exactly four feet wide may obstruct the water flow to such an extent that they are "too large to ignore." In other words, if an obstruction of any size interrupts the water discharge "in a manner to limit the distribution" of water to the hazard, then additional sprinklers may be necessary "to compensate for areas under the obstruction that would not receive adequate coverage."[22]

On this critical question—whether water coverage in the event of a fire would be sufficient—there is no evidence in the record indicating that the board made a decision. It did not make any findings on the distance between the clouds, their number, or their effect on the sprinkler discharge pattern. Rather, it appears that the board believed it had no choice in the matter and regarded its approval as mandatory on account of the clouds' four-foot width. Therefore, we hold that it failed to consider other relevant provisions of NFPA 13, especially its overall purpose "to ensure that a sufficient amount of water from the sprinkler reaches the hazard."[23]

## V. CONCLUSION

Administrative expertise requires deference from the judiciary. However, because the board has not answered the crucial question, that is, whether adequate water reaches the floor, we VACATE the decision of the board and REMAND the case to the board for additional proceedings consistent with this opinion.

*See generally* A.R. Lacey, A Dictionary of Philosophy 49 (defining "denial of antecedent" as the "[f]allacy of arguing that if the antecedent of a conditional statement is false, so is the consequent, e.g. 'If all cats are black, Tiddles is black; but not all cats are black, so Tiddles is not black.' "); 5 Encyclopedia of Philosophy 37, 42 (Paul Edwards ed., 1967).

20.  *See* former AMC 23.45.101.3, *supra* note 5.

21.  NFPA 13 § 5–5.5.3.1.

22.  *Id.* §§ 5–5.5.3 & A 5–5.5.3.

23.  *Id.* § 5–5.5.